**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JAMES A. STANLEY, #370643 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-932 |
| KATHLEEN GREEN, *Warden*, et al. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM

Self-represented Plaintiff James A. Stanley ("Stanley"), an inmate confined to Poplar Hill Pre-Release Unit ("PHPRU"), filed the above-captioned civil rights Complaint regarding medical care for his chronic illness.  ECF Nos. 1, 4.  Defendants Sarah Brown, Jessica Cecil, Jason Clem, and Paul Matera ("Medical Defendants") move to dismiss the Complaint.  ECF No. 18.  Defendant Gary Mumford also moves to dismiss the Complaint.  ECF No. 19.  Defendant Kathleen Green moves to dismiss or for summary judgment.  ECF No. 23.  Stanley opposes the Motions.[1]  ECF Nos. 24, 25, 29.

## Background

Stanley claims he suffers from Multiple Sclerosis ("MS").  He states he was diagnosed with the disease in Weld County, Colorado, where he was held as a pre-trial detainee.  Stanley alleges that during his time in Colorado, he experienced uncontrolled seizure activity, degenerative arthritis, loss of vision, and heaviness in his limbs.  Stanley was not permitted to have a medical brace in the Colorado jail and was not taken to see a neurologist by the Colorado

---

[1] In addition, Stanley moves to require the prison library to comply with his requests for copies of cases within five working days.  ECF No. 26.  The motion shall be denied.

Sheriff and the medical contractor, Correctional Medical Services ("CMS").  An action for contempt was filed in a Colorado court, resulting in an order requiring Stanley to be seen by his Neurologist, Dr. Hayes.  Dr. Hayes' office called Stanley's home to advise him of the appointment, and Stanley's wife in turn called the jail to confirm that Stanley had the appointment with Dr. Hayes; however, jail officials canceled the appointment because they believed Stanley's knowledge of the time and date of the appointment posed a security risk. ECF No. 1 at 3 - 4.

Stanley was then transferred from Weld County Jail to Jefferson County, Colorado Jail where he was given his medical brace.  Nothing further regarding a neurology appointment occurred until jail officials were threatened by the Colorado court.  Stanley states that in November 2010, he was taken to Exempla Lutheran Hospital in Wheatridge, Colorado, where he was given an MRI.  Doctors compared the 2010 MRI with five previous MRIs taken in Maryland and diagnosed Stanley with MS.  Doctors prescribed Stanley the steroid Prednisone for the issues related to his eye and prescribed pain medication for his MS.

Stanley alleges that follow-up for his MS was consistent until he was released to a Maryland detainer on February 12, 2011.  Stanley claims that while in custody in Jefferson County, he suffered three episodes or exacerbations[2] involving loss of vision in the right eye and heaviness or temporary loss of the use of a limb.  In each case, Stanley states he was given heavy doses of Prednisone, which restored his sight as well as functionality to his limb.  ECF No. 1 at 4 – 5.

---

[2] An MS exacerbation is an attack of symptoms or relapses that occur in the most common form of the disease known as relapsing-remitting MS.  ECF No. 29 at Ex. B.

Stanley claims his extradition from Colorado to Maryland involved his transportation by private extradition service[3] for 12 days and through 38 States.  Stanley alleges he was given no medication during the trip, causing him to have several seizures.[4]  He further alleges he was not given medical treatment during the trip, and the pain associated with his MS worsened.  ECF No. 1 at 5.

Within six months of arriving in Worcester County, Maryland, Dr. Jason Clem examined Stanley and prescribed the same medications prescribed by his Colorado doctor.  Stanley claims Dr. Clem said he could not send him to see a neurologist, even though, according to Stanley, he had a serious need for the appointment.  While confined in the Worcester County Detention Center, Dr. Clem increased Stanley's pain medications and prescribed steroids.[5]  ECF No. 1 at 5.

On September 9, 2011, Stanley was transferred to Maryland Reception Diagnostic Classification Center ("MRDCC"), where he was put on chronic care lists for both his seizure disorder and MS.  Officials then transferred him to Eastern Correctional Institution ("ECI"), where he arrived on September 14, 2011.  Upon arrival to the facility, staff performed a physical examination, and listed him to be seen in the chronic care clinics[6] for MS and a seizure disorder.  Stanley alleges his inmate identification card ("ID") was changed, adding both seizure disorder and MS to the back of the ID.  ECF No. 1 at 5 – 6.

---

[3] Stanley does not describe the vehicle in which he was transported.

[4] During one seizure Stanley's eye glasses were shattered.  ECF No. 1 at 5.

[5] Stanley claims Dr. Clem transferred to the Eastern Correctional Institution.  ECF No. 1 at 5.

[6] Chronic Care Clinics consist of regular, routine appointments with medical care providers for purposes of monitoring chronic illnesses.  See DCD 130 Medical Manuals, Office of Treatment Services: Chronic Disease Management Manual (Division of Correction Directives, October 2009).

In October of 2011, Stanley alleges he had another exacerbation. He was seen by the first available medical staff, Physician's Assistant ("PA") Bruce Ford.  Stanley claims Ford admitted he knew nothing about MS and even confused the disease with Muscular Dystrophy, asking Stanley if the Labor Day Jerry Lewis Telethon might find a cure for him.   After Stanley complained, he alleges Corizon decided he probably should not see Ford anymore and assigned him to be seen exclusively by Dr. Paul Matera ("Matera").

Stanley states that Matera prescribed eight medications, which Stanley kept on his person, and pain medicine available through the Nurse's pill call in the evenings.  Stanley also alleges that if he experienced an exacerbation, he also had steroid medication available to take. He alleges medical staff refused to examine him when his symptoms worsened.  The staff allegedly explained Stanley would know more about his needs, and the staff would determine if his symptoms worsened through his prescription refill requests.  ECF No. 1 at 6 – 7.

In January 2012, Stanley again experienced loss of eyesight and was prescribed steroids. Despite six days of heavy administration of steroids, his eye sight did not return.  Subsequently PA Jessica Cecil, arranged for him to receive 10 more days of steroid treatment with doses tapering down.  She advised him to return in 14 days.  Stanley claims that Cecil and Matera opined, based on a 2007 CT Scan, that he did not have MS and no further steroids should be prescribed.   Finally, Stanley alleges a request for Administrative Remedy filed by him complaining that his MS diagnosis was changed and treatment was stopped, went unanswered. ECF No. 1 at 7 - 8.

On February 21, 2012, Stanley again lost his eyesight.  Stanley was initially refused treatment because of a court filing in Somerset County, Maryland challenging the medical staff. Stanley filed another request for Administrative Remedy on February 15, 2011 and, as a result,

4

was scheduled to be seen by PA Ford on March 19, 2011.  Doctors prescribed steroids for Stanley, who claims the order was issued against the wishes of the medical administration.  ECF No. 1 at 8.

Stanley states that according to the MS Society only an MRI can detect the lesions indicative of MS; CT Scans cannot detect the lesions.  He claims he has all six of his previous MRIs that show the lesions leading to his diagnosis.  He has provided a release to Corizon so the films could be obtained by staff for review, but they have not executed the releases.  ECF No. 1 at 8.

In summary, Stanley claims that Worcester County Jail extradited him from Colorado to Maryland despite advanced notice of his medical conditions.  He alleges he was denied medical treatment during the drive across the country, which he describes as non-stop.  Additionally, he claims Worcester County Jail improperly denied neurological treatment for his seizures and MS for seven months.  Stanley alleges he has been denied medical treatment while confined at ECI, waiting eight weeks to see medical staff for a complaint related to the loss of his eyesight.  He also complains ECI medical staff reversed the diagnosis for MS based on inadequate information.  He further claims that Corizon has refused to provide treatment to him despite the contempt rulings issued by the Colorado court.   He states Dr. Matera was supposed to set up a neurological consult in January 2012, but the consultation has not yet occurred.  ECF No. 1 at 8.

**Standard of Review**

<u>Motion to Dismiss</u>

In reviewing a complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  <u>See</u>

<u>Venkatraman v. REI Sys., Inc.</u>, 417 F.3d 418, 420 (4th Cir. 2005); <u>Ibarra v. United States</u>, 120 F.3d 472, 473 (4th Cir. 1997); <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.3d 321, 325-26 (4th Cir. 2001).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  <u>Id.</u>   Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> at 563.  Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 566.

<u>Motion for Summary Judgment</u>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of  its guarantee against cruel and unusual punishment.  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  See Farmer v. Brennan, 511

7

U.S. 825, 837 (1994).  Objectively, the medical condition at issue must be serious.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  See Farmer, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. Farmer, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  See Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2000) (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Medical Defendants seek dismissal of the complaint.  Defendant Cecil alleges the claim against her is barred by the doctrine of res judicata.  ECF No. 18 at Memorandum, 8.  Where there has been a final judgment on the merits in a prior suit; an identity of the cause of action in both the earlier and the later suit; and an identity of parties or their privies in the two suits, res judicata is established.  See Pension Ben. Guar. Corp. v. Beverley, 404 F.3d 243, 248 (4th Cir. 2005).  The doctrine of res judicata precludes the assertion of a claim after a judgment on the

merits in a prior suit by the same parties on the same cause of action.  See Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991).  In addition, "[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."  Id., (quoting Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355, 359 (4th Cir. 1989)).

Stanley filed an action in the District Court for Somerset County, Maryland naming as Defendants Jessica Cecil, Dr. Paul Matera, and the Warden of ECI.  His allegations against Cecil in that case were that she was denying he has MS, refusing treatment, and ignoring Colorado court orders.  ECF No. 18 at Ex. 1.  A settlement agreement reached in that case included Stanley's agreement to dismiss the claims against Cecil with prejudice.  Id. at Ex. 2.

In response to the Motion to Dismiss, Stanley simply asserts that the instant case was filed before the state case. ECF No. 25 at 3.  He adds that Cecil no longer works for Corizon and "there has been significant objection to disclosing her work performance."  Id.  He further states that the state claim was dismissed because Corizon was supposed to push for an evaluation and treatment of Stanley by Dr. Clem.  Id.  The claim raised against Cecil in the instant case is virtually identical to the claim in state court.  Cecil is entitled to be dismissed from this case under the principles of res judicata.

Defendants Matera, Clem, and Brown seek dismissal because the complaint fails to state a claim against them.  The only mention of Matera's involvement in Stanley's care is that he provided eight prescriptions for Stanley to keep with him and one pain medication accessible through pill call; that Matera agreed with Cecil that Stanley did not have MS; and that Matera failed to set up a neurological consultation for Stanley.  ECF No. 18 at 10.  Dr. Clem's

involvement is less clear, as Stanley only mentions him in the context of his initial physical examination at Worcester County Jail.  Additionally, Stanley claims he is not allowed to see Clem because Clem agrees with Stanley's opinions regarding his diagnosis.  Id.   Thus it is unclear why Dr. Clem is accused of wrongdoing in the context of Stanley's medical treatment after leaving Worcester County Jail.

Defendant Sarah Brown is not alleged to have done anything in terms of denying Stanley medical care; (she is simply named as a defendant in the amended complaint, with no explanation as to why she should be held liable.)  Id. at 11.

Stanley alleges in his opposition that Defendants Green, Corizon, Clem, Matera, Cecil and Brown "have colluded to hide discovery subpoenaed, hidden actual diagnosis and refused continued treatment."  ECF No. 25 at 2.  He alleges that MRI depictions, which establish he has MS, have been confiscated and held because Defendants do not want to have to pay for Stanley's treatment by a neurologist.  He states they have improperly maintained he does not have MS despite the fact that he has qualified for Social Security Disability upon his release.  With respect to Defendant Brown, Stanley claims she is liable because she maintains the provider schedule and provides access to Corizon doctors and physician's assistants.  He asserts Brown has "provided extensive roadblocks to the treatment and access for [MS] and maintained a relationship with P.A. Cecil that continued in a detrimental manner for treatment of the Plaintiff."  ECF No. 25 at 3.

Viewed in a light most favorable to Stanley, the complaint alleges that he has been provided treatment in the form of prescribed steroids and pain medication, albeit reluctantly.  The main focus of his grievance is that his diagnosis was questioned and he disagrees with the methodology utilized to revisit his diagnosis.  There is no demonstration that all treatment has

been withdrawn for malicious reasons, or that Stanley has suffered harm as a result of the alleged decision to question his diagnosis.  The court is sympathetic with Stanley's frustration regarding the quality of care received and the timeliness of providing needed consultations with neurology specialists.  Notwithstanding that frustration, however, the complaint does not support a finding that the care provided by Medical Defendants has amounted to an unnecessary and wanton infliction of pain.[7]  Therefore the claims against Medical Defendants fail to state a claim and will be dismissed.

Defendant Gary Mumford, Warden of Worcester County Jail, also seeks dismissal of the complaint against him because there are no allegations raised against him indicating that he contributed in any way to a failure to provide adequate medical care to Stanley.  ECF No. 19.  Defendant Warden Kathleen Green seeks dismissal from the case on a similar ground and adds that Stanley has received constitutionally adequate medical care.  ECF No. 23.

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims.  See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no *respondeat superior* liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in

---

[7] This Court notes that a continued pattern of delays in providing Stanley with appropriate consultations with specialists to monitor and address his serious medical conditions may state a claim against those responsible if supported by appropriate evidence.

conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

With respect to Warden Mumford, Stanley claims that as Warden of the Worcester County Jail, he "is always responsible in all acts of the local facility."  ECF No. 24 at 1.  He states that Mumford made it clear to him that the County did not have the funds to pay for treatment of his conditions; and that Stanley's transfer to State custody would result in treatment because information regarding his diagnosis would be sent with Stanley.  Id. at 2.  Stanley admits that information regarding his diagnosis was forwarded to the Maryland Division of Correction and that while he was in the County facility he was provided with prednisone for treatment of his symptoms.  Id.  Stanley's claim against Mumford is based on a theory of *respondeat superior*. Mumford's knowledge of Stanley's medical condition and his alleged statements regarding costs are insufficient to establish supervisory liability.  Mumford's Motion to Dismiss will be granted.

With respect to Warden Green, Stanley's claim is similarly based on *respondeat superior*. See ECF No. 29 at 2 (stating that Green is responsible for making sure all inmates in the facility are medically evaluated and treated).  Stanley adds claims against Green in his Opposition, claiming his legal mail was opened in violation of directives governing the handling of inmate legal mail; and that Green has failed to respond to Stanley's administrative remedy requests; ordered security staff to obtain all copies of Stanley's MRI films in order to "keep the diagnosis quiet;" and retaliated against Stanley for the instant lawsuit by delaying his transfer to a lower

security prison.  Id. at 3 – 4.  There is no allegation that Warden Green interfered with medical treatment prescribed for Stanley, nor is there a claim that she has facilitated improper treatment.

Assuming Stanley's allegations regarding his legal mail, administrative remedy requests, and MRI films are true, they fail to state a cognizable claim.  To the extent the allegations imply that Warden Green has denied Stanley his constitutional right of access to the courts, he has failed to allege an injury.  See Bounds v. Smith, 430 U.S. 817, 821 (1977) (prisoners have a constitutionally protected right of access to the courts).  "The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  Lewis v. Casey, 518 U.S. 343, 349 (1996).

Stanley's retaliation claim also fails.  The alleged retaliatory act in the instant case was a delay in his transfer to a pre-release unit, where he is now confined.  A delay in a transfer is not an adversity sufficient to support a prima facie case of retaliation.  See Burton v. Livingston, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'"  Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  Thus, the claims against Warden Green will also be dismissed.  A separate Order follows.

October 31, 2012                                                  /s/
                                        _____
                                        George L. Russell, III
                                        United States District Judge